IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RHONDA PRICE-RICHARDSON          *

          Plaintiff              *

          vs.                    *   CIV. ACTION NO. MJG-17-2038

DCN HOLDINGS, INC., d/b/a        *
ACCOUNTSRECEIVABLE.COM
                                 *

          Defendant              *

*       *       *       *       *       *       *       *       *

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendant DCN Holdings, Inc.,
d/b/a/ Accountsreceivable.com's Motion to Dismiss Plaintiff's
Amended Complaint [ECF No. 17] and the materials submitted
relating thereto.[1]

I.   BACKGROUND

     A.   The Parties and the Claims

     Rhonda Price-Richardson ("Plaintiff") brings an action
against DCN Holdings, Inc. d/b/a/ Accountreceivables.com ("DCN"
or "Defendant").  Plaintiff alleges that Defendant violated
various provisions of the Fair Debt Collection Practices Act
("FDCPA") through misrepresentations and omissions made in
connection with the collection of Plaintiff's debt.

---

[1] Defendant previously filed a Motion to Dismiss Plaintiff's
original Complaint.  ECF No. 11.

Plaintiff seeks recovery of actual damages, statutory damages, reasonable attorneys' fees and costs, and any other punitive damages.

B.  Statement of Facts[2]

Plaintiff received dental work from Dr. Kalambayi Kabasela, and because of her lack of dental insurance and limited financial means defaulted on her account, which totaled $4,525 ("Subject Debt").[3]  Am. Compl. ¶¶ 8-9, ECF No. 16.  Dr. Kabasela, in turn, transferred the Subject Debt to DCN, a Florida-based debt collection agency that operates in the State of Maryland. Id. ¶¶ 5, 10.  On May 9, 2016, DCN sent a collection letter to Plaintiff.  Id. ¶ 11. The collection letter, printed on Defendant's letterhead, stated: (1) the Plaintiff owed $4,525; (2) "[a]ll reasonable efforts to resolve ... the account have been exhausted"; (3) "[c]ontact us at once if you wish to avoid" being "[reported] to the three major credit reporting agencies for up to seven years"; and (4) "[t]his is an attempt to collect a debt. Any information will be used for that purpose."  Id. ¶¶ 12-13; Ex. B, ECF No. 16-2.

---

[2] The "facts" herein are as alleged by Plaintiff and are not necessarily agreed upon by Defendants.
[3] The Amended Complaint does not state when the dental services occurred, or the period of time that Dr. Kabasela attempted to collect the account before transferring it to the Defendant.

On November 8, 2016, six months after receiving the letter, Plaintiff called Defendant and spoke with a company representative. Am. Compl. ¶ 16, ECF No. 16. After accessing Plaintiff's account, the representative initially stated that the account was a "duplicate" and that the account was "closed." Id. ¶ 17. The representative then reported that the account was still open and DCN was reviewing it for "possible action to move forward."[4] Id. During the course of the conversation with the Plaintiff, the representative never identified DCN as a debt collection agency. Id. ¶ 18.

As a result of the conversation, Plaintiff filed suit against DCN alleging multiple violations of the FDCPA. Id. ¶¶ 4-6; Pl.'s Resp. in Opp'n at 1-2, ECF No. 17-1. Plaintiff first argues that DCN's alleged conflicting statements regarding the Subject Debt were unlawful misrepresentations actionable under 15 U.S.C. § 1692e, e(2)(A), e(10), and f. Am. Compl. ¶¶ 29, 31, ECF No. 16. Second, Plaintiff contends, DCN's alleged statement regarding "possible action to move forward" was an unlawful threat actionable pursuant to § 1692e(5) and f. Id. Finally, Plaintiff claims, DCN allegedly did not identify itself as a

---

[4] It is unclear from Plaintiff's Complaint whether the representative additionally demanded payment for the Subject Debt, or only responded to Plaintiff's questions regarding her account. Compare Am. Compl. ¶ 19, ECF No. 16 ("During the Phone Call, Defendant's representative attempted to collect the Subject Debt.") with Ex. A, ECF No. 16-1 (omitting any mention of Defendant's representative demanding payment).

debt collector during the course of its debt collection
communication with Plaintiff in violation of 15 U.S.C. §
1692e(11) and f.  Id. ¶ 30.

In response to the Plaintiff's allegations, DCN has moved
to dismiss, arguing that (1) plaintiff-initiated communications
are not regulated by § 1692 and its subparts; and (2) in the
alternative, DCN's alleged statements were not deceptive or
unconscionable misrepresentations or threats.  Def.'s Mot. at 5-
10, ECF No. 17-1.

II.  <u>DISMISSAL STANDARD</u>

A motion to dismiss filed pursuant to Rule 12(b)(6) of the
Federal Rule of Civil Procedure[5] test the legal sufficiency of a
complaint.  A complaint need only contain "'a short and plain
statement of the claim showing that the pleader is entitled to
relief,' in order to 'give the defendant fair notice of what the
. . . claim is and the grounds upon which it rests.'"  <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 554, 555 (2007) (alteration in
original) (citations omitted).  When evaluating a 12(b)(6)
motion to dismiss, a plaintiff's well-pleaded allegations are
accepted as true and the complaint is viewed in the light most
favorable to the plaintiff.  However, conclusory statements or

---

[5] All "Rule" references herein are to the Federal Rule of Civil
Procedure.

"a formulaic recitation of the elements of a cause of action will not [suffice]." Id. A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombley, 550 U.S. at 557).

Inquiry into whether a complaint states a plausible claim is a "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Twombley, 550 U.S. at 557). Thus, if "the well-pleaded facts [contained within the complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original)).

III. DISCUSSION

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to protect consumers from certain deceptive and unfair debt collection practices.[6] 15 U.S.C. § 1692. Section 1692e generally prohibits the "use [of] any false, deceptive, or misleading representation ... in connection with the collection of any debt," and also provides a non-exhaustive list of sixteen

---

[6] The FDCPA also contains unrelated provisions to eliminate "abusive" tactics used by debt collectors. 15 U.S.C. § 1692d.

prohibited activities, including the following alleged in

Plaintiff's Complaint:

> e(2)(A) "The false representation of the
> character, amount or legal status of any
> debt[.]"
>
> e(5) "The threat to take any action ... that
> is not intended to be taken."
>
> e(10) "The use of any false representation
> or deceptive means to collect or attempt to
> collect any debt..."
>
> e(11) "The failure to disclose ... in
> subsequent communications that the
> communication is from a debt collector..."

15 U.S.C. § 1692e; United States v. Nat'l Fin. Servs., Inc., 98

F.3d 131, 135 (4th Cir. 1996).

Section 1692f additionally prohibits the use of "unfair or

unconscionable means to collect or attempt to collect any debt,"

and includes a non-exhaustive list of prohibited conduct.[7]  15

U.S.C. § 1692f.  A plaintiff is only required to prove one

violation of the FDCPA to trigger liability.  § 1692k(a); e.g.,

Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 725 (D.

Md. 2011).

To state a successful claim pursuant to the FDCPA, the

plaintiff must show that "(1) the plaintiff has been the object

of collection activity arising from consumer debt, (2) the

---

[7] This section provides a non-exhaustive list of eight prohibited
practices, including for example, collecting any amount not
authorized by the agreement that creates the debt, soliciting a
postdated check, or depositing a postdated check.

defendant is a debt [] collector as defined by the FDCPA, and
(3) the defendant has engaged in an act or omission prohibited
by the FDCPA." Stewart v. Bierman, 859 F. Supp. 2d 754, 759 (D.
Md. 2012) (quoting Dikun v. Streich, 369 F. Supp. 2d 781, 784–85
(E.D. Va. 2005)). DCN does not contest that it is a debt
collector within the definition provided in the FDCPA.[8] Rather,
DCN initially argues that the telephone call should not be
subject to § 1692e's regulations because the communication was
plaintiff-initiated and therefore any alleged statements or
omissions were not made "in connection with the collection of
any debt." Def.'s Mot. at 5-6, ECF No. 17-1. In the
alternative, DCN contends that the alleged statements were not
unlawful misrepresentations or threats. Id. at 7-10. Finally,
DCN argues that its conduct is non-actionable under 1692f
because this section was intended to prohibit conduct not
previously regulated by other FDCPA sections, and therefore,
assuming that its conduct does not violate 1692e, DCN argues
that the same conduct cannot be actionable under 1692f. Id. at
10.

The Court will first analyze whether the FDCPA applies to
the phone call, then consider Plaintiff's 15 U.S.C. § 1692e

---

[8] Section 1692a(6) defines a debt collector as "any person ...
who regularly collects or attempts to collect, directly or
indirectly, debts owed or due or asserted to be owed or due to
another."

claims, and conclude by examining Plaintiff's 15 U.S.C. § 1692f
claims.


A.  <u>DOES THE FDCPA APPLY TO THE TELEPHONE CALL?</u>

The FDCPA's consumer protections are triggered when a
communication is made "in an attempt to collect a 'debt.'"  <u>Mabe
v. G.C. Servs. Ltd. P'ship</u>, 32 F.3d 86, 87-88 (4th Cir. 1994).
Whether a communication is deemed as such is not subject to a
bright-line rule, but is a "'commonsense inquiry' that evaluates
the 'nature of the parties' relationship,' the '[objective]
purpose and context of the communication [],' and whether the
communication includes a demand for payment."  <u>In re Dubois</u>, 834
F.3d 522, 527 (4th Cir. 2016) (quoting <u>Gburek v. Litton Loan
Servicing LP</u>, 614 F.3d 380, 385 (7th Cir. 2010)).  Even absent
an explicit demand for payment,[9] a communication can still be
deemed an activity "connected" with the collection of debt in
light of the other <u>Gburek</u> factors.  <u>Grden v. Leiken Ingber &
Winters PC</u>, 643 F.3d 169, 173 (6th Cir. 2011).

It is undisputed that Plaintiff and DCN's relationship was
only borne out of Plaintiff's inability to pay her debt.  The
question, therefore, surrounds the "objective purpose" of the
parties' communication.  <u>In re Dubois</u>, 834 F.3d at 527; <u>Grden</u>,

---

[9] In the present case, it is unclear whether there was a demand
for payment or not during the telephone call.  <u>See supra</u> n.4.

643 F.3d at 172.  DCN argues that Plaintiff initiated the
conversation and therefore its representative was merely engaged
in a "ministerial response to a debtor inquiry" and not an
attempt "to induce payment by the debtor."  Def.'s Mot. at 6,
ECF No. 17-1 (quoting Grden, 643 F.3d at 173).  In contrast,
Plaintiff argues that the telephone call was in response to
DCN's collection letter and therefore the communication was a
logical extension of DCN's attempt to collect the debt, and not
a mere informational response to a customer's inquiry.  Pl.'s
Resp. in Opp'n at 5-8, ECF No. 18.

     The Fourth Circuit has not directly addressed the matter
presented.  However, the Court finds persuasive the rationale
expressed by the Western District of Pennsylvania in Trunzo v.
Citi Mortg., 876 F. Supp. 2d 521 (W.D. Pa. 2012).  In Trunzo,
the bank informed plaintiffs, who were delinquent in their
mortgage payment, that foreclosure had begun and that they
should contact the agency handling the process.  Id. at 535.
They contacted the agency who in turn sent them an informational
letter containing monetary figures with a disclaimer that the
agency "is a debt collector attempting to collect a debt."  Id.
The plaintiffs claimed that the monetary figures were
misrepresentations of the actual-amount owed and therefore sued
alleging FDCPA violations.  Id.  The defendants moved to dismiss
the FDCPA claim arguing that the letter was only an

informational response to a customer inquiry and was not an attempt to collect the debt. _Id._ The district court rejected the defendant's argument, finding that (1) the communication would not have occurred "but for" the plaintiffs following a directive to initiate contact with the debt collection agency; and (2) the letter's disclosure language demonstrates that the letter was _also_ an attempt to induce payment, not just a response to a consumer inquiry. _Id._ at 536-37. The district court, therefore, concluded that the FDCPA governed the interaction. _Id._ at 537.

In the instant case, DCN's initial letter encouraged Plaintiff to contact them by stating "[c]ontact us at once if you wish to avoid this action." Ex. B, ECF No. 16-2. To paraphrase from _Trunzo_, the fact that Plaintiff took the bait and reached out to DCN does not transform the purpose of DCN's actions — the collection of a delinquent debt - into a benign exchange of helpful information. Second, the representative did not merely respond that the account was open, but added that DCN was reviewing it for "possible action to move forward," Am. Compl. ¶ 17, ECF No. 16, insinuating that there could be consequences for lack of payment. Taken together, these observations lead the Court to find that there is a plausible claim that the telephone call qualifies for FDCPA protections.

Defendant seeks to rely upon <u>Grden</u> for the proposition that the FDCPA does not protect plaintiff-initiated responses.  Def's Resp. in Supp. at 2-3, ECF No. 19.  In <u>Grden</u>, however, the plaintiff (1) called the debt collection agency on his own volition to verify his account balance; and (2) the agency merely provided him an amount due, and "did not . . . threaten any consequences if Grden did not pay." <u>Grden</u>, 643 F.3d at 173.  Therefore, <u>Grden</u> does not provide support for Defendant's position and the Court shall consider the telephone call as subject to the FDCPA.

B. <u>SECTION 1692e CLAIMS</u>

DCN argues that even if this Court considers the telephone call a "communication in connection with the collection of [a] debt," their alleged conduct did not violate 1692e and its subparts.  Def's Mot. at 7-10, ECF No. 17-1.  Plaintiff alleges three different forms of § 1692e prohibited conduct:

(1) misrepresentations;

(2) unlawful threat; and

(3) lack of disclosure.  <u>Id.</u>

Each of Plaintiff's allegations shall be addressed in turn.

1.  <u>SECTION 1692e "MISREPRESENTATIONS" CLAIMS</u>

Section 1692e generally protects consumers from a debt collection agencies' use of "false, deceptive, or misleading representation[s]" while attempting to collect a debt. Section 1692e(2)(A) prohibits 'false representations of the ... status of [the] debt."

In determining whether a statement is "false, deceptive, or misleading," courts employ a "least sophisticated consumer" standard, as the intention of the FDCPA was to protect "the gullible as well as the shrewd." <u>Nat'l Fin. Servs., Inc.</u>, 98 F.3d at 135-36. Courts have found § 1692e(2)(A) misrepresentations actionable, for example, when a debt collection agency claims that the debt has not been satisfied when it undisputedly was paid. <u>Russel v. Absolute Collection Serv.</u>, 763 F.3d 385, 394-95 (4th Cir. 2014). Similarly, overstatements pertaining to an amount owed are actionable. <u>See Powell v. Palisades Acquisition XVI, LLC</u>, 782 F.3d 119, 127 (4th Cir. 2014). In both instances, the misrepresentations influenced the consumers' decision "<u>in deciding how to respond</u> to the efforts to collect the debt." <u>Id.</u> (emphasis in original).

Section 1692e(10) further prohibits the "use of false representations and [deception] to collect ... any debt." Courts have interpreted this prohibition to include, for

example, a false misrepresentation that unpaid debts will be referred to an attorney, as this statement has the capacity to "unjustifiably frighten an unsophisticated consumer into paying a debt that he or she does not owe." Nat'l Fin. Servs., Inc., 98 F.3d at 138-39 (quoting Masuda v. Thomas Richards & Co., 759 F. Supp. 1456, 1459-61 (C.D. Cal. 1991)). Additionally, misrepresentations intending to convey impression of a robust, powerful collection agency are actionable because they "intimidate[] plaintiffs [into facilitating] the collection of the underlying debt." Van Westrienen v. Americontinental Collection Corp., 94 F. Supp. 2d 1087, 1103-04 (D. Or. 2000).

Plaintiff alleges that DCN misrepresented the Subject Debt by first stating that the account was a "duplicate" and "closed," and then concluding that the account was still open. Am. Compl. ¶ 17, ECF No. 16. Although the conflicting statements might have confused Plaintiff, it does not appear that these statements about the Subject Debt are actionable. Normally, as explained above, FDCPA-regulated misrepresentations induce the consumer to pay the debt. See Gionis v. Javitch, Block & Rathbone, 405 F. Supp. 2d 856, 868 (S.D. Ohio) (finding § 1692e(10) violation because misstatements "reasonably ... pressured [consumer] to immediately pay the debt ..."). In this case, however, the alleged misstatements that the account was a "duplicate" and "closed," Am. Compl. ¶ 17, ECF No. 16, was not a

statement that made payment more likely.  Plaintiff does not

deny that she owed the amount, as she agrees to the services

that she received and that she was just unable to pay.  Id. ¶ 8-

9.  Once the DCN representative concluded that the account was

still open, Plaintiff was in the same place that she had been

before she communicated with DCN, namely required to pay the

debt, without DCN having applied any pressure through deceptive

or misleading representations.

Accordingly, this Court shall dismiss Plaintiff's § 1692e,

e(2)(A), and e(10) claims.


2.  SECTION 1692e(5) UNLAWFUL THREAT CLAIM

Section 1692e(5) protects consumers from 'threats to take

any action ... that [the debt collector does] not [intend to

take].  Communications, therefore, "violate § 1692e(5) if (1) a

['least sophisticated'] debtor would reasonably believe that the

[communication] threaten[s] legal action; and (2) the debt

collector does not intend to take legal action."  Nat'l Fin.

Servs., Inc., 98 F.3d at 135-36.  This second prong, is not

subject to the objective "least sophisticated consumer"

standard, rather it presents a question of fact.  Jeter v.

Credit Bureau, Inc., 760 F.2d 1168, 1175-77 (11th Cir. 1985);

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 n.16 (11th

Cir. 2010) ("For obvious reasons, application of the 'least-

sophisticated consumer' standard was not required [in
determining] ... whether the debt collector truly intends to
take the threatened action [, rather it] is evaluated from the
perspective of the debt collector as opposed to the debtor.").
Courts have found the following factors relevant in determining
whether a debt collector intended to take legal action: (1) did
the agency have internal procedures to file lawsuits; and (2)
has it initiated legal actions against any debtor in recent
history.  Nat'l Fin Servs., Inc., 98 F.3d at 136; see Jeter, 760
F.2d 1168, 1177 (11th Cir. 1985) (analyzing how often debt
collector actually took legal action in determining § 1692e(5)
violations).

     Plaintiff argues that in light of DCN's conflicting
characterizations regarding the Subject Debt, the statement that
they were reviewing the account "for possible action to move
forward," was a threat of legal action that DCN did not intend
to take.  Am. Compl. ¶ 29, ECF No. 16.

     This Court, however, finds that Plaintiff has not alleged
facts that plausibly claim that DCN did not intend to take such
action.  Plaintiff does not allege that DCN does not have the
internal procedures in place to proceed with legal action or
that they have not taken such action in the past.  Accordingly,
DCN's conflicting statements whether the account was still open
cannot be construed as evincing a lack of intent on DCN's behalf

to proceed with its stated objective of reviewing the account
for possible future action, and therefore, this claim shall be
dismissed.

### 3.   SECTION 1692e(11) "FAILURE TO DISCLOSE" CLAIM

Section 1692e(11) requires debt collectors to disclose
their identity to the consumer in its initial communication and
in subsequent communications.  § 1692e(11). See Carroll v.
Wolpoff & Abramson, 961 F.2d 459, 460-61 (4th Cir. 1992)
(requiring disclosure in all subsequent follow-up letters).
Although courts have generally required that other § 1692e
violations rest upon material misrepresentations, holding that
immaterial statements are non-actionable,[10] this requirement does
not attach to a § 1692e(11) disclosure omission.  Warren v.
Sessoms & Rogers, P.A., 676 F.3d 365, 374 (4th Cir. 2012).
Therefore, a mere failure to disclose is actionable under the
FDCPA.  Id.

Defendant does not dispute Plaintiff's allegation that
during the telephone call it did not explicitly disclose its
identity to Plaintiff.  Def.'s Mot. at 8-9, ECF No. 17-1.

---

[10] See Stewart v. Bierman, 859 F. Supp. 2d 754, 762-64 (D. Md.
2012), for an extensive discussion of 1692e's materiality
requirement.  The Stewart Court held that fraudulent signatures
on accurate court filings were not an actionable
misrepresentation, as it was not a material falsehood.  Id. at
765.

Rather, DCN first contends, similar to its earlier argument, when a plaintiff initiates a communication "the policy reasons behind the FDCPA disappear." Id. (quoting Gorham-Dimaggio v. Countrywide Home Loans, Inc., No. 1:05-CV-0583, 2005 WL 2098068 at *2 (N.D.N.Y. Aug. 30, 2005)). DCN, therefore, argues it was not required to disclose its identity to Plaintiff. Id. Second, DCN contends that the collection letter, which triggered the insuing phone call, sufficiently disclosed its identity making any additional disclosure superfluous. Id. The Court will address these arguments in turn.

Pertaining to DCN's initial argument, this Court finds that although Plaintiff made the telephone call, she has alleged plausible facts that the call was encouraged by DCN. See supra Section III.A. This encouragement effectively deems the parties interaction a communication performed "in connection with a debt collection," triggering FDCPA protections. Therefore, this Court finds Defendant's initial argument unpersuasive.

Defendant, however, additionally argues that the letter's language - "[t]his is an attempt to collect a debt" -, which triggered Plaintiff's telephone call, had already sufficiently disclosed DCN's identity.[11] Def.'s Resp. in Supp. at 6-8, ECF

---

[11] Plaintiff contends that the collection letter did not fulfill the FDCPA's disclosure requirments because the letter did not explicitly state that it was from a debt collector. Am. Compl. ¶ 30, ECF No. 16; Pl.'s Resp. in Opp'n at 12-13, ECF No. 17-1.

No. 19. Accordingly, DCN argues, the disclosure would have been superfluous because Plaintiff already knew DCN's identity. Id. Defendant supports its argument by citing to Costa v. Nat'l Action Fin. Servs., 634 F. Supp. 2d 1069, 1067-77 (E.D. Cal 2007). Def.'s Resp. in Supp. at 8, ECF No. 19. In Costa, the Eastern District for California held that when a consumer responds to the debt collector's initial communication with the understanding of who they are dealing with, the disclosure was not required. Costa, 634 F. Supp. 2d at 1077. The district court reasoned that, "[r]equiring a debt collector to interrupt the conversation to interject she was a debt collector would likely be 'a pointless formality.'" Id. (quoting Dikeman v. Nat'l Educators, Inc., 81 F.3d 949, 954 (10th Cir. 1996)).

The Fourth Circuit has not resolved the issue and the Court finds Defendant's logical argument persuasive – Section 1692e and its subparts were intended to protect consumers from deceptive practices, not to require needless disclosures. See § 1692 (stating the purposes behind the FDCPA).

---

A collection letter complies with the FDCPA when it contains language indicating that the letter is attempting to collect a debt, although absent that it is from a debt collector, as even an unsophisticated consumer would understand that the letter is from a debt collector. Volden v. Innovative Fin. Sys., 440 F.3d 947, 955 (8th Cir. 2006). Here, DCN's letter clearly stated "[t]his is an attempt to collect a debt. Any information obtained will be used for that purpose." Ex. B, ECF No. 16-2. Accordingly, this Court finds that DCN's collection letter fulfills the FDCPA requirments.

There is language in a Fourth Circuit case, <u>Carroll v.</u>
<u>Wolpoff & Abramson</u>, 961 F.2d 459 (4th Cir. 1992), that should be
addressed.  In <u>Carrol</u>, the Fourth Circuit announced that §
1692e(11) equally applies to all communications, initial and
subsequent, between a debt collector and a consumer.  <u>Id.</u> at
461.  The Court reasoned that requiring a debt collector to
declare its identity in all communications "furthers
congressional intent to prevent the abuse of debtors."  <u>Id.</u>

The facts of <u>Carroll</u>, however, are distinguishable from the
present case.  In <u>Carroll</u>, the debt collector sent two
collection letters.  <u>Id.</u> at 460.  The initial letter complied
with the FDCPA disclosure requirements, but the second did not.
<u>Id.</u>  The consumer did not contact the debt collector after the
first letter to initiate the second letter. <u>Id.</u>  Rather it was
the consumer's lack of engagement that triggered the second
letter.  <u>Id.</u>  The Court reasoned that, "[c]onsumers sometimes do
not receive first notices, and thus, follow-up letters may often
provide them with their first notice of the debt collection
process."  <u>Id.</u> at 461.  In the present case, however, similarly
to <u>Costa</u>, the consumer contacted the debt collector in response
to a collection letter that contained the disclosure
requirement.  This factual difference is significant, as the
stated rationale in <u>Carroll</u> for requiring disclosures in follow-

up communications does not readily apply to the facts in the present case.

Accordingly, the Court shall dismiss Plaintiff's § 1692e(11) "failure to disclose" claim.


C.   SECTION 1692f "UNCONSCIONABLE" CLAIMS

Section 1692f prohibits the "use [of] unfair or unconscionable means to collect or attempt to collect any debt." "Unfair and unconscionable" is not expressly defined by the statute, but prohibits conduct included within its enumerated subsections, § 1692f(1)-(8), and provides courts with the ability to sanction conduct that the FDCPA does not directly address.  Stewart v. Bierman, 859 F. Supp. 2d 754, 765 (D. Md. 2012) (citing Foti v. NCO Fin Sys., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)).  Courts have found, for example, debt collectors that engage in collection activities without a license are in violation of this statute.  See Hauk v. LVNV Funding, LLC, 749 F. Supp. 2d 358, 366 (D. Md. 2013).  However, courts have limited § 1692f's prohibitive reach to conduct that is "separate and distinct" from other alleged FDCPA violations.  See Stewart, 859 F. Supp. 2d at 765 (holding that § 1692e conduct could not be the basis for a § 1692f violation); see also Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 781-82 (E.D.N.C. 2011) (citing legislative history behind §

20

1692f); <u>Winberry v. United Collection Bureau</u>, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (noting the increasing consensus amongst the district courts that a § 1692f violation must implicate conduct outside of other FDCPA provisions).

Here, Plaintiff does not allege additional wrongful conduct by DCN outside of its 1692e (and its subparts) allegations.  Am. Compl. ¶¶ 29-30, ECF No. 16-1.  Accordingly, as no "specific and distinct" conduct is alleged by Plaintiff, its § 1692f claims shall be dismissed.

V.  <u>CONCLUSION</u>

For the foregoing reasons:

(1)  Defendant DCN Holdings, Inc., d/b/a/ Accountsreceivable.com's Motion to Dismiss Plaintiff's Amended Complaint [ECF No. 17-1] is GRANTED.

(2)  Judgment shall be entered by separate Order.

SO ORDERED, this <u>Thursday, February 14, 2018</u>.

_____/s/_____
Marvin J. Garbis
United States District Judge